UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>                Plaintiffs,<br><br>      -v-<br><br>E. SCOTT PRUITT, et al.,<br><br>                Defendants. | 18-CV-1030 (JPO) |
| NATURAL RESOURCES DEFENSE<br>COUNCIL, INC., et al.,<br><br>                Plaintiffs,<br><br>      -v-<br><br>ENVIRONMENTAL PROTECTION<br>AGENCY, et al.,<br><br>                Defendants. | 18-CV-1048 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

These two cases concern the definition of five words in the Clean Water Act: "waters of the United States." Specifically, they concern actions of federal agencies in implementing a definition of that phrase. The previous administration promulgated a broad definition of the phrase. The current administration promulgated a rule delaying the effective date of that broad definition. Plaintiffs in these cases seek to invalidate the latter rule. Before addressing the merits, however, Defendants request that these cases be transferred to the Southern District of Texas. For the reasons that follow, the motions to transfer are denied.

**I.      Background**

This case involves two similar lawsuits. The first is brought by a group of states and the District of Columbia (collectively, "the States"), with New York serving as the lead plaintiff. The second is brought by the Natural Resources Defense Council and the National Wildlife

Federation.  Because the two cases are mostly identical, the Court treats them as one except where otherwise noted.  "Plaintiffs" refers to the plaintiffs in both cases. "Defendants" refers to the defendants in both cases, including the industry groups that have intervened as defendants.

The Clean Water Act regulates discharge into "navigable waters."  The statute defines "navigable waters" as "the waters of the United States."  33 U.S.C. § 1362(7).  The definition of this latter phrase—or "WOTUS"—is the subject of these cases.

In the 1980s, the Environmental Protection Agency and the U.S. Army Corps of Engineers ("the Agencies") promulgated rules defining "waters of the United States."  *See, e.g.*, Final Rule for Regulatory Programs of the Corps of Engineers, 51 Fed. Reg. 41,216-17 (Nov. 13, 1986).  That definition remained essentially unchanged until 2015, when the Agencies jointly promulgated a rule broadening the definition.  *See* Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015).

The new definition was immediately challenged in the federal courts.  In 2015, a federal court in the District of North Dakota issued an injunction prohibiting implementation of the 2015 definition.  *See North Dakota v. E.P.A.*, 127 F. Supp. 3d 1047 (D.N.D. 2015).  That injunction applied to thirteen states.  Later, the Sixth Circuit issued a nationwide stay of the 2015 definition.  *See In re Clean Water Rule*, 803 F.3d 804, 809 (6th Cir. 2015).

Earlier this year, however, the Supreme Court held that the Sixth Circuit lacked jurisdiction over the case.  *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617 (2018).  The Court held that the challenge to the 2015 rule should have been brought in the district court rather than the court of appeals.  On remand, the Sixth Circuit vacated the nationwide stay and dismissed the case.  *In re U.S. Dep't of Def.*, 713 F. App'x 489, 490−91 (6th Cir. 2018).  This

seemingly paved the way for implementation of the 2015 definition everywhere except for the thirteen states subject to the North Dakota injunction.

Soon after the Supreme Court ruling, however, the Agencies jointly promulgated a rule delaying implementation of the 2015 definition by two years—until February 6, 2020. *See* Definition of "Waters of the United States"—Addition of an Applicability Date to 2015 Clean Water Rule, 83 Fed. Reg. 5200-01 (Feb. 6. 2018). The stated purpose of this delaying rule—which the parties refer to as the "Suspension Rule" or "Applicability Rule"—was to "provid[e] continuity and regulatory certainty . . . while the agencies continue to consider possible revisions to the 2015 rule." *Id.* The Plaintiffs in these cases challenge the legality of the Suspension Rule—the rule delaying implementation of the 2015 definition.

The last piece of the puzzle is the parallel litigation in the U.S. District Court for the Southern District of Texas. That suit began in 2015, seeking to invalidate the 2015 definition. *See Am. Farm Bureau Fed'n v. E.P.A.*, No. 15 Civ. 165 (S.D. Tex.); *Texas v. E.P.A.*, No. 15 Civ. 162 (S.D. Tex.). The Texas case had been stayed pending the outcome of the Sixth Circuit case, but it was revived after the Sixth Circuit case was dismissed. The plaintiffs in Texas are now moving for a nationwide injunction against the 2015 definition. That motion has been fully briefed but is yet to be decided.

To recap, here is the status quo: The 2015 definition of WOTUS has never been implemented and remains enjoined in thirteen states. The Sixth Circuit's nationwide stay has been dissolved. The plaintiffs in Texas seek a nationwide injunction against the 2015 definition. The Suspension Rule is also in effect, meaning that the 2015 definition would not be in effect at least until 2020 even if there were no injunction against it. The 1980s definition still reigns.

## II.       Legal Standard

The relevant statute is 28 U.S.C. § 1404(a).  It provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The Second Circuit has explained that "[d]istrict courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis."  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

There are two steps to this analysis.  First, the Court asks whether this action could have been brought in the proposed transferee district.  Second, the Court asks whether the convenience of the parties and the interests of justice weigh in favor of transfer.  The burden is on the party seeking transfer to make a "strong case for transfer."  *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)).

## III.      Discussion

There are four motions to transfer:  In each of the two cases, the federal government and the industry groups seek transfer to the Southern District of Texas.  The Plaintiffs contest both prongs of the § 1404(a) analysis.  Each prong is discussed in turn.

### A.       Could These Cases Have Been Brought in the Southern District of Texas?

The first question is whether these suits could have been brought in the proposed transferee district.  A court may transfer venue "to any other district or division where [the case] might have been brought."  28 U.S.C. § 1404(a).  Thus, the question is whether venue would have been proper in the Southern District of Texas.

The relevant venue provision is 28 U.S.C. § 1391(e), which covers suits against officers or agencies of the federal government.  It provides that venue is proper in any district in which:

> (A) a defendant in the action resides,
>
> (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1).  Defendants argue that venue would have been proper in the Southern District of Texas under either (A) or (B).  Each of their arguments is addressed in turn.

### 1.    Do Defendants "Reside" in Texas?

Defendants do not "reside" in Texas for the purposes of the venue statute.  For venue purposes, a federal agency resides where it is headquartered—usually Washington, D.C.  It is not enough that an agency has offices in Texas.  *See Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978) ("There is nothing inequitable in limiting the residence of a federal agency to the District of Columbia.  That has been the settled law for decades."); *Jenkins v. West*, No. 95-0789, 1995 WL 704018, at *4 (D.D.C. Oct. 23, 1995) (holding that proper venue for suit against the Secretary of the Army is in Virginia, where the Pentagon is located).  Nor do Defendants argue that the agency heads in these cases perform a significant amount of their official duties in Texas.  *See Bartman v. Cheney*, 827 F. Supp. 1, 2 (D.D.C. 1993) (noting that venue may be appropriate where "an officer or agency head performs a 'significant amount' of his or her official duties") (quoting *Doe v. Casey*, 601 F. Supp. 581, 584 (D.D.C. 1985)).

Accordingly, 28 U.S.C. § 1391(e)(1)(A) provides no basis for bringing suit in Texas.

### 2.    Did a Substantial Part of the Events Occur in Texas?

The events leading to these suits did not occur in Texas.  Defendants argue that the Texas litigation gave rise to this suit because the Suspension Rule was motivated in part by the legal

challenges to the 2015 definition of WOTUS.  But the mere fact that event A motivated a

defendant to take action B does not mean that A gives rise to a lawsuit over the legality of B.

And even if it did, the Texas litigation would still not constitute "a substantial part" of the events

giving rise to the claim in this suit.  *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir.

2005) ("[W]e caution district courts to take seriously the adjective 'substantial.'").

Accordingly, 28 U.S.C. § 1391(e)(1)(B) provides no basis for bringing suit in Texas.

### 3.      Could These Cases Have Been Brought as Crossclaims?

Defendants' strongest argument is that these suits could have been asserted as

crossclaims in the Texas case.  (Because the Texas case began during the previous

administration, the environmental-group Plaintiffs here are nominally on the same side of the

"*v.*" as the federal government in the Texas case.)

Some courts have held that the ability to assert a counterclaim or crossclaim may satisfy

the "might have been brought" requirement of the venue-transfer statute.  *See A. J. Indus., Inc. v.

U.S. Dist. Court for the Cent. Dist. of Cal.*, 503 F.2d 384, 387 (9th Cir. 1974) (counterclaims);

*Our Children's Earth Found. v. E.P.A.*, No. C 08-01461, 2008 WL 3181583, at *7 (N.D. Cal.

Aug. 4, 2008) (crossclaims).  But only two of the plaintiffs here—the two environmental

groups—are parties in the Texas litigation.  The State plaintiffs did not intervene in the Texas

case and are not parties in that case.  Their claims, therefore, could not have been brought in

Texas.  It would be a stretch to say that a plaintiff's case "might have been brought" in another

district merely because the plaintiff *could have* intervened in some case and *could have* asserted

a crossclaim.  *Cf. Our Children's Earth Found.*, 2008 WL 3181583, at *7 ("[T]he instant case

could have been filed as a crossclaim in lawsuits commenced in [another district] . . . *in which

[the plaintiff] intervened.*") (emphasis added).

In sum, the case brought by the environmental groups might have been brought in Texas, but the case brought by the States could not.

### B. Do the Convenience of the Parties and the Interests of Justice Weigh in Favor of Transfer?

Given that one of the two cases—the one brought by the environmental groups—satisfies the first requirement, the Court moves on to the second transfer requirement: the convenience of the parties and the interests of justice.

Answering this question involves a non-exhaustive list of factors:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co.*, 462 F.3d at 106–07 (alteration in original) (quoting *Albert Fadem Tr. v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)) (internal quotation marks omitted).

Not all of the factors are relevant here. This is a law-heavy administrative-record case, meaning there will be little discovery or depositions, if any. As the parties recognize, the key factors here are (1) judicial efficiency, (2) the interest in avoiding inconsistent results, (3) the convenience of the parties, and (4) the plaintiffs' choice of forum.

### 1. Judicial Efficiency

The first argument for transfer is based on efficiency. Defendants argue that the Texas court is already familiar with the WOTUS litigation and is currently considering whether to enjoin the 2015 definition. Transfer to Texas, Defendants argue, will allow that court to decide both the validity of the 2015 rule and the validity of the Suspension Rule.

This argument weighs in favor of transfer, but only slightly. Transfer would lead to efficiency in the same way that it is efficient to centralize all litigation of a given subject matter

in a single forum.  But the Court assigns this factor only slight weight because, at their core, the

two suits are about different legal questions:  The Texas litigation concerns the validity of the

2015 definition; this litigation concerns the validity of the Suspension Rule.  One could find that

the former is valid but the latter is not, and vice versa.  The arguments for and against the legality

of the Suspension Rule may be largely independent of the arguments regarding the merits of the

2015 definition.

Moreover, the efficiency gains of transfer are offset by the loss of inter-court dialogue

that would result from having one court, and one circuit, decide a matter of national importance.

It is a bedrock principle of our federal court system that the adjudication of novel and difficult

issues of law is best served by letting questions percolate among the lower federal courts, even at

the cost of short-term disuniformity.[1]  That is not to say that centralization of certain cases is

never beneficial.  The desire for uniformity is why, for example, Congress vested exclusive

nationwide patent jurisdiction in the Federal Circuit.  Congress even vested exclusive jurisdiction

in the D.C. Circuit for many challenges to administrative rules, so that "a federal agency

regulating on a national scale need tailor its action to only one body of precedent, rather than to a

patchwork of potentially conflicting cases in multiple circuits."  Eric M. Fraser et al., *The*

---

[1]        This systemic preference was recognized over a century ago by the Supreme
Court in *Mast, Foos & Co. v. Stover Manufacturing Co.*, which held that one circuit is not bound
by a decision of another.  177 U.S. 485 (1900).  The Court recognized the "substantial value in
securing uniformity of decision, and discouraging repeated litigation of the same question."  *Id.*
at 488.  But the Court still rejected inter-circuit *stare decisis*, reasoning that otherwise "the
indiscreet action of one court might become a precedent, increasing in weight with each
successive adjudication, until the whole country was tied down to an unsound principle."  *Id.*; *see
also* Samuel Estreicher & Richard L. Revesz, *Nonacquiescence by Federal Administrative
Agencies*, 98 Yale L.J. 679, 737 (1989) ("[D]octrinal and experiential dialogue on the part of the
circuits aids the Supreme Court in deciding cases on the merits.  Doctrinal dialogue isolates the
issues on which the courts of appeals are divided and presents the competing positions on those
issues, probably stated in their most compelling terms.").

*Jurisdiction of the D.C. Circuit*, 23 Cornell J.L. & Pub. Pol'y 131, 145 (2013); *see also* Erwin Chemerinsky & Larry Kramer, *Defining the Role of the Federal Courts*, 1990 B.Y.U. L. Rev. 67, 84 (1990) ("Where the desire for uniformity is especially strong, federal jurisdiction may be made exclusive."). But we should not automatically assume that it is better for a nationwide issue to be decided by a single court. Indeed, the Supreme Court acknowledged that "immediate court-of-appeals review facilitates quick and orderly resolution of disputes about the WOTUS Rule," *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. at 633, but still held that the Sixth Circuit lacked jurisdiction because Congress could have—and, for other environmental provisions, has—vested exclusive jurisdiction in a single court. Congress has not done so for this provision, so these cases should be treated like any other administrative law case.

Finally, it is worth noting that even if these cases were transferred, there would still be parallel litigation elsewhere, because a federal district court in South Carolina denied transfer to Texas of an identical case. *See S.C. Coastal Conservation League v. Pruitt*, No. 18 Civ. 330, 2018 WL 2184395 (D.S.C. May 11, 2018). This further undercuts any efficiency gains.

### 2.     Risk of Inconsistent Results

The second argument for transfer is that it would minimize the risk of inconsistent results. Defendants argue that if these cases are not transferred, it is possible that the two courts would reach divergent conclusions or, in the worst-case scenario, issue conflicting injunctions.

This factor, too, weighs in favor of transfer, but again only slightly. Conflicting court decisions are a serious concern, but that risk is minimal here, for three reasons. First, the question before the Texas court—whether the 2015 rule is lawful—is different from the question before this Court, which is whether the Suspension Rule is lawful. As discussed above, one could conclude that the former is valid but the latter is not, and vice versa. Put another way, each of the two cases presents a separate hurdle for the proponents of the 2015 rule: in order for the

2015 rule to go into effect, it must withstand the challenges to its validity *and* overcome the Suspension Rule.  The Texas court will deal with the former question; this Court will deal with the latter.

Second, we should not assume that either the Texas court or this Court will issue a nationwide injunction in the event that either invalidates a government action.  Nationwide injunctions against federal agencies are relatively new and legally untested.  It is possible that either or both of the courts dealing with the WOTUS rule will issue a geographically limited remedy rather than a nationwide one.  That is what the North Dakota court did in enjoining the 2015 rule in the thirteen plaintiff-states only.[2]  Some courts have expressed doubt about the desirability of the nationwide injunction, in large part because it encourages forum-shopping, raises the risk of conflicting injunctions, and stifles inter-circuit dialogue.[3]  Some academic commentators, too, have cautioned against the nationwide injunction, arguing that injunctions either should be limited to the plaintiffs or should not extend beyond the circuit of the enjoining

---

[2]      In an unpublished order, the North Dakota court explained its rationale for limiting the remedy to the plaintiff states:  "On the one hand, there is a desirability for uniformity regarding a national rule with national application.  On the other hand, there is the idea of respecting the decisions of other courts and other sovereign states."  *North Dakota v. E.P.A.*, No. 15 Civ. 59, slip op. at 4 (D.N.D. Sept. 4, 2015), ECF. No. 79.

[3]      *See, e.g.*, *City of Chicago v. Sessions*, 888 F.3d 272, 288 (7th Cir. 2018) (affirming a nationwide injunction but noting the "hazards" that it poses, including "stym[ying] the development of the legal issues through the court system as a whole" and "the potential for forum shopping by plaintiffs"); *Aziz v. Trump*, 234 F. Supp. 3d 724, 738 (E.D. Va. 2017) (limiting injunction to residents of Virginia in order to "avoid encroaching on the ability of other circuits to consider the questions raised") (quoting *Va. Soc'y for Human Life v. Fed. Election Comm'n*, 263 F.3d 379, 393 (2001)) (internal quotation marks omitted).

court.[4]  And while the Supreme Court has yet to weigh in on the legitimacy of the nationwide

injunction, it may do so this term.[5]

    Finally, from a practical perspective, odds are that the Texas court will reach a decision

on the merits before this Court does.  The Texas court has a fully briefed motion for a

preliminary injunction before it.  No such motion has been filed in these cases.  If the Texas

court invalidates the 2015 definition, this Court will adjudicate these cases so as to avoid

conflicting rulings.  Indeed, if the 2015 rule is enjoined nationwide, this Court might decide to

stay these cases just as the Texas court stayed its case during the pendency of the Sixth Circuit

stay.

    **3.    Convenience of the Parties**

    The next factor—convenience of the parties—weighs against transfer in the case brought

by the States, but less so in the case brought by the environmental organizations.  New York is

the lead plaintiff in the suit brought by the States, and, unsurprisingly, it is far more convenient

for New York to litigate in New York.  And though it might be more convenient for the federal

government to litigate both issues in Texas, the civil division of the U.S. Attorney's Office in the

---

    [4]    *See* Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*,
131 Harv. L. Rev. 417, 469 (2017) (proposing a rule that "[a] federal court should give an
injunction that protects the plaintiff vis-à-vis the defendant, wherever the plaintiff and the
defendant may both happen to be [but the] injunction should not constrain the defendant's
conduct vis-à-vis nonparties"); Getzel Berger, Note, *Nationwide Injunctions Against the Federal
Government: A Structural Approach*, 92 N.Y.U. L. Rev. 1068, 1100 (2017) (proposing a rule
that "[i]njunctions against the federal government should not extend beyond the circuit where the
enjoining court sits").  Others, however, have highlighted the merits of nationwide injunctions.
*See, e.g.*, Amanda Frost, *In Defense of Nationwide Injunctions*, 93 N.Y.U. L. Rev. (forthcoming
2018).

    [5]    The Supreme Court granted certiorari on the question "[w]hether the global
injunction is impermissibly overbroad."  Petition for Writ of Certiorari at I, *Trump v. Hawaii*,
No. 17-965 (U.S. Jan. 5, 2018), 2018 WL 333818 at *I, *petition granted*, 138 S. Ct. 923 (2018).

Southern District of New York is perfectly capable of defending the federal government's position.

Defendants argue that the States already participate in the Texas case, pointing to an amicus brief they filed in the Texas case. But filing an amicus brief is different than litigating an entire case. Defendants' argument is stronger when it comes to the environmental organizations, since they have intervened in the Texas case and are already litigating in that forum. Accordingly, this factor points strongly against transfer in the case brought by the States, but less so for the case brought by the environmental groups.

### 4.    Plaintiff's Choice of Forum

The final pertinent factor—the plaintiff's choice of forum—also weighs against transfer. "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum . . . ." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). This is especially so when the plaintiff has chosen its home forum. *Id.*

New York is the lead plaintiff in the lawsuit brought by the States, and its choice of forum deserves substantial weight.[6] There is no indication of blatant forum-shopping, which otherwise would have supported transfer. *See Freeman v. Hoffmann-La Roche Inc.*, 2007 WL 895282, at *3 (S.D.N.Y. Mar. 21, 2007). Here, too, the environmental groups' arguments are

---

[6]        It is impossible to fully analyze this element without acknowledging the *realpolitik* at play. The fact is that lawsuits challenging federal government policies are sometimes strategically filed in specific districts and circuits. *See* Bray, *Multiple Chancellors*, *supra* note 4, at 460; Berger, *Nationwide Injunctions*, *supra* note 4, at 1091–93. Rightly or wrongly, plaintiffs may think that certain districts or circuits are more likely than others to be receptive to certain arguments. One might think that this is an unfortunate feature of our judicial system, but that does not mean that a plaintiff's strategic choice should be disregarded, especially when the plaintiff sues in its home forum.

weaker, since it does not appear from the briefing that New York is their natural home forum. Nevertheless, their choice of forum also deserves weight.[7]

### C.    Balancing the Factors

In sum, two factors (efficiency and risk of inconsistent decisions) weigh slightly in favor of transfer, while two factors (convenience and choice of forum) weigh more heavily against transfer.  As to the State Plaintiffs, Defendants have satisfied neither of the two § 1404(a) requirements because (1) they could not have sued in Texas, and (2) the convenience and choice-of-forum interests are particularly strong.  It is a closer call when it comes to the environmental-group Plaintiffs because (1) they could have sued in Texas via crossclaims, and (2) their convenience and choice-of-forum interests are weaker.  Nevertheless, it would make no sense to transfer one case but not the other.  All that would accomplish is to duplicate the litigation, expend double the judicial resources, and increase the risk of inconsistent decisions. Accordingly, transfer is not appropriate for either case.

---

[7]    Defendants argue that Plaintiffs have taken opposite positions in the Texas litigation and in these cases, and Defendants protest that Plaintiffs cannot have it both ways.  In opposition to the motion for preliminary injunction in Texas, the States and environmental groups took the position that the 2015 definition poses no risk of imminent harm because it has been suspended by the Suspension Rule.  Defendants argue that Plaintiffs' claim in Texas is at odds with their position here that the Suspension Rule is invalid.  But there is nothing inconsistent between those two arguments:  One can maintain that the Suspension Rule is legally invalid but nevertheless say that as long as the Suspension Rule is in effect, it mitigates any harm from the 2015 definition.  (Of course, that argument carries the implicit concession that if the Suspension Rule is found invalid, the 2015 definition *would* harm the industry groups.  But that is an issue relevant only to the Texas case.)

**IV.     Conclusion**

For the foregoing reasons, the motions to transfer are DENIED.

The Clerk of Court is directed to close the motions at Docket Numbers 24 and 31 in Case

No. 18 Civ. 1030, and Docket Numbers 22 and 27 in Case No. 18 Civ. 1048.

SO ORDERED.

Dated:  May 29, 2018
        New York, New York

_____
                J. PAUL OETKEN
            United States District Judge